E-FILED
Wednesday, 01 August, 2018  01:32:21 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| DR. SAADUR RAHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | |
| METHODIST HEALTH SERVICES | ) | Equitable Relief is Sought |
| CORPORATION, an Illinois not-for-profit | ) | |
| corporation, PROCTOR HEALTH CARE | ) | |
| INCORPORATED, an Illinois not-for-profit | ) | Demand for Jury Trial |
| corporation, and PEKIN MEMORIAL HOSPITAL, | ) | |
| an Illinois not-for-profit corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW AND FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY
## INJUNCTION AND DEMAND FOR A JURY TRIAL

NOW COMES Plaintiff Dr. Saadur Rahman ("Dr. Rahman" or "Plaintiff"), by and through

his attorneys, and for his Complaint at Law and for Temporary Restraining Order ("TRO") and

Preliminary Injunction and Demand for a Jury Trial (the "Complaint") against Defendants

Methodist Health Services Corporation ("Methodist"), an Illinois not-for-profit corporation,

Proctor Health Care Incorporated ("Proctor"), an Illinois not-for-profit corporation and Pekin

Memorial Hospital ("Pekin"), an Illinois not-for-profit corporation (Methodist, Proctor and Pekin

shall collectively be referred to hereinafter as the "Unity Point Hospitals" or the "Defendants" and

all parties shall collectively be referred to as the "Parties"), states as follows:

### INTRODUCTION

1.      The Defendants have engaged in predatory and exclusionary conduct to reduce

competition and raise prices of acute hemodialysis, peritoneal dialysis and plasmapheresis

Services (the "Services") in the Peoria area, at the expense of consumer patients as well as doctors who are not employed by Renal Care Associates. S.C. ("Renal Care"). For reference, the term "acute" merely means that the treatment is performed while the patient is hospitalized.

2.    The Unity Point Hospitals have substantial market power in the broader market for hospital services, as well as in the specific market at issue: performance of the Services.

3.    Renal Care is a professional Services company composed of approximately seventeen (17) doctors specializing in nephrology, and has substantial market power in the market for the Services at a different distribution level than the Unity Point Hospitals.

4.    On May 30, 2018, the Unity Point Hospitals sent Dr. Rahman a letter (the "May 2018 Letter") indicating that they entered into an exclusive agreement (the "Exclusive Agreement") with Renal Care pursuant to which Renal Care will become the exclusive provider of the Services at the Unity Point Hospitals. As a result of the Exclusive Agreement, Dr. Rahman will lose his privileges to perform the Services effective August 1, 2018. *See* the May 2018 Letter, attached hereto as **Exhibit 1.**

5.    Additionally, the only other hospital in the Peoria area is Saint Francis Medical Center ("St. Francis"), which also has an exclusive agreement with Renal Care. Consequently, should the Exclusive Agreement be allowed to stand, it will not only wholly prevent Dr. Rahman from performing the Services in the Peoria area, but it will completely devastate the nephrology practice he has built over the past three years, which depends on his ability to perform the Services for his patients who are hospitalized during their treatment.

6.    Accordingly, Dr. Rahman seeks legal relief against the Unity Point Hospitals under Sections 1 and 2 of the Sherman Act (15 U.S.C. § 1-2), the Illinois Antitrust Act (740 ILCS 10/3 (2)-(3), and the Illinois Consumer Fraud Act (815 ILCS 505/2). Dr. Rahman is also

pursuing a state common law claim for tortious interference with prospective economic advancement against the Unity Point Hospitals.

7.      Dr. Rahman also seeks a temporary restraining order, and a preliminary and permanent injunction enjoining the Unity Point Hospitals from revoking Dr. Rahman's privileges to perform the Services and from enforcing the Exclusive Agreement against Dr. Rahman because:

a)      The Exclusive Agreement violates Section 1 of the Sherman Act by unreasonably restraining competition in the relevant product market for the Services and geographic market, which includes the Peoria area;

b)      The Exclusive Agreement also violates Section 2 of the Sherman Act because it constitutes monopolization, or alternatively, attempted monopolization of the relevant product and geographic market with respect to the Services;

c)      The Unity Point Hospitals have similarly violated the Illinois Antitrust Act, as well as the Illinois Consumer Fraud Act by entering into the Exclusive Agreement with Renal Care;

d)      Dr. Rahman will be irreparably harmed if this Court does not grant him this injunctive relief because he will be completely unable to perform the Services in the Peoria area, destroying his ability to maintain a practice there;

e)      The equitable doctrine of balancing equities or conveniences favors Dr. Rahman, as an injunction will only preserve the status quo requiring the Unity Point Hospitals to continue to allow Dr. Rahman to exercise his privileges at the Unity Point Hospitals; and

f)      This injunctive relief is in the public interest because the Exclusive Agreement will eviscerate the patient right to choose their neprhrologist in the Peoria area by forcing patients to select a nephrologist at Renal Care doctor to perform the Services.

8.      Dr. Rahman seeks an immediate hearing on this matter as soon as practicable so that this Court may issue its injunctive relief.

## PARTIES

9.      Dr. Rahman is a citizen of the State of Illinois residing in Dunlap, Illinois which

is located in Peoria County.

10.     Methodist is an Illinois not-for-profit corporation. Methodist is a hospital located in Peoria, Illinois in Peoria County and is licensed to provide the Services in the State of Illinois.

11.     Proctor is an Illinois not-for-profit corporation. Proctor is a hospital located in Peoria, Illinois in Peoria County and is licensed to provide the Services in the State of Illinois.

12.     Pekin is an Illinois not-for-profit corporation. Pekin is a hospital located in Pekin, Illinois in Tazewell County and is licensed to provide the Services in the State of Illinois.

## JURISDICTION AND VENUE

13.     Dr. Rahman brings this lawsuit pursuant to Sections 1 and 2 of the Sherman Act (15 U.S.C. § 1-2), the Illinois Antitrust Act (740 ILCS 10/3), the Illinois Consumer Fraud Act (815 ILCS 505), and raises a state common law claim for tortious interference with prospective economic advancement.

14.     This Court has jurisdiction over Dr. Rahman's Sherman Act claims pursuant to 29 U.S.C. § 1331 (federal question).

15.     This Court has supplemental jurisdiction over Dr. Rahman's state law claims pursuant to 29 U.S.C. § 1367 because they are so related to his claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue is properly placed in the Central District of Illinois, Peoria Division, through 29 U.S.C. § 1391(b) because a substantial part of the facts, events or omissions giving rise to Dr. Rahman's claims occurred in this judicial district, and because the Unity Point Hospitals' principal place of business is located within this judicial district.

## FACTS

## I.      Background

17.      Dr. Rahman is a medical doctor who specializes in nephrology. He has been board-certified in nephrology since 2014, and has performed the Services at the Unity Point Hospitals since 2015.

18.      Dr. Rahman has spent the last three (3) years treating patients and building a successful nephrology practice in the Peoria area.

19.      As a nephrologist, Dr. Rahman specializes in kidney care and treating diseases of the kidneys. More than 50% of the time, nephrology patients require dialysis, which may be conducted on an inpatient (acute) or outpatient basis depending on the health of the patient at that particular time.

20.      A patient has the ability to choose his or her nephrologist.

21.      Since 2015, Dr. Rahman has had privileges to perform the Services at the Unity Point Hospitals, which allows him to continue treating his dialysis patients via the Servicews upon being admitted to one of the Unity Point Hospitals.

22.      Whenever one of Dr. Rahman's patients is admitted to one of the Unity Point Hospital, he continues to provide the Services to that patient, including acute dialysis (i.e. dialysis while hospitalized) which occurs about 50% of the time.

23.      Once that patient is discharged, Dr. Rahman continues to treat the patient on an outpatient basis.

24.      Dr. Rahman's dialysis patients frequently require admission to a hospital, meaning that if he does not have privileges to perform the Services at the Unity Point Hospitals, his patients will be forced to choose another nephrologist at Renal Care to perform the Services thereby

interrupting the patient's continuity of care and removing the patient's right to choose their nephrologist.

25.     If Dr. Rahman does not have privileges to perform the Services at the Unity Point Hospitals, few, if any doctors would continue to refer patients to him, as they would be aware he could not continue to treat patients if they are admitted to the hospital.

26.     Accordingly, Dr. Rahman would be unable to maintain a nephrology practice without privileges to perform the Services in a hospital throughout the entire Peoria area. He would be unable to attract new patients, as no referring doctors would jeopardize their patients' continuity of care.

27.      Any of Dr. Rahman's existing patients admitted to the Unity Point Hospitals would be required to switch nephrologists and to choose a nephrologist at Renal Care upon learning they cannot choose anyone other nephrologist to perform the Services.

28.     On May 30, 2018, the Unity Point Hospitals sent Dr. Rahman the May 2018 Letter indicating that effective August 1, 2018, the Unity Point Hospitals and Renal Care entered into an Exclusive Agreement whereby Renal Care will become the exclusive provider of the Services. *See* **Ex. 1** (May 2018 Letter).

29.     Specifically, the May 2018 Letter states that effective August 1, 2018, Renal Care "will become the exclusive provider of" the Services at the Hospitals. *Id.*

30.     The May 2018 Letter further states that effective August 1, 2018, Dr. Rahman will no longer be able to exercise his privileges at any of the Unity Point Hospitals for the Services. *Id.*

31.     In addition to the Exclusive Agreement that Renal Care just entered into with the Unity Point Hospitals, Renal Care also has an exclusive agreement with St. Francis for the Services.

32.     Since St. Francis entered into an exclusive agreement with Renal Care, Dr. Rahman has not received a single consult or referral from St. Francis because the referring doctors know that Dr. Rahman is unable to perform the Services at St. Francis.

33.     The Unity Point Hospitals and St. Francis are the only hospitals in the Peoria area that perform the Services. There are no other hospitals in the Peoria area that perform the Services.

34.     Accordingly, if the Exclusive Agreement between the Unity Point Hospitals and Renal Care were to stand, there would be no other nephrologists in or around Peoria that could perform the Services for patients, regardless of whether those patients prefer a nephrologist who is not associated with or employed by Renal Care.

35.     For the reasons discussed above, Dr. Rahman would lose his entire nephrology practice should the Exclusive Agreement stand, as a nephrologist cannot maintain his or her business without the ability to perform the Services.

## II.    Relevant Product Market

36.     The sale of the Services to patients is the relevant product market at issue.

37.     The Services meet a unique need for patients who are admitted with kidney-related problems, and there is no substitute for the Services.

38.     The relevant product market does not include outpatient dialysis services performed outside of the hospital when a patient is not hospitalized. A patient admitted to a

hospital for inpatient care who requires the Services must receive the Services while hospitalized, and cannot wait for outpatient care.

39.     Accordingly, any patient at one of the Unity Point Hospitals who require the Services must receive those Services from a nephrologist who has privileges to perform the Services at the Unity Point Hospitals.

40.     Further, the sale of the Services to patients, rather than insurance companies or any other payor, is the relevant product market because patients can, and often do choose a specific nephrologist to perform those Services. The selection of a nephrologist is up to the patient.

41.     Accordingly, there are no reasonable substitutes or alternatives to the Services sold to patients. This constitutes a unique market where a seller with sufficient market control could successfully impose a small but significant and non-transitory increase in price.

## III.    Relevant Geographic Market

42.     The relevant geographic market in this matter is comprised of the counties of Peoria, Tazewell, and Woodford, which surround the city of Peoria (the "Peoria area").

43.     There are only four (4) hospitals that provide the Services in the Peoria area: St. Francis, and the three Unity Point Hospitals (Methodist, Proctor and Pekin).

44.     St. Francis entered into its own exclusive agreement with Renal Care prior to the Unity Point Hospitals entering into the Exclusive Agreement at issue in the instant case.

45.     Patients in the Peoria area who require the Services must come to the Unity Point Hospitals or St. Francis, as it would be impractical to leave the Peoria area to seek the Services elsewhere. Typically, patients will seek this care close to their home or workplace.

46.     As a result, any hospitals outside the Peoria area that provide the Services do not compete with the Unity Point Hospitals or St. Francis for those Services in a way that would significantly constrain the pricing or other behavior of the Unity Point Hospitals.

47.     Similarly, because Renal Care now has exclusive agreements with both St. Francis and the Unity Point Hospitals, there are no medical doctors, or nephrology groups, that can compete with Renal Care for the Services in a way that would significantly constrain pricing or other behavior in the market for those Services.

48.     Indeed, a patient admitted to St. Francis or the Unity Point Hospitals will have no choice but to select a nephrologist employed by Renal Care to perform the Services.

49.     Further, as a result of the Exclusive Agreement, as well as Renal Care's prior exclusive agreement with St. Francis, there is a complete barrier to entry in the relevant product and geographic market as no nephrologist, other than a nephrologist at Renal Care can perform the Services in the Peoria area.

50.     Similarly, any doctor, including Dr. Rahman, who had or desires to obtain such privileges at the Unity Point Hospitals, will lose them and will generally be unable to perform the Services anywhere in the Peoria area.

## IV.     Peoria Area Market Participants

51.     As stated above, the Peoria area has four hospitals where patients can receive the Services: Methodist, Proctor, Pekin and St. Francis:

A.     Methodist is located in downtown Peoria, has approximately 329 patient beds, and employs approximately 600 physicians performing a full range of Services.

B.     Proctor is located in Peoria, has approximately 300 patient beds, and employs approximately 500 physicians.

C.      Pekin is located in Tazewell rather than Peoria County, but is located only twelve miles from downtown Peoria. It has approximately 125 patient beds, and employs approximately 240 physicians.

D.      St. Francis is the primary hospital of the OSF HealthCare System, and is the only other hospital in the Peoria area that performs the Services that is not part of the Unity Point Hospitals. It employs approximately 800 physicians, and has approximately 616 patient beds.

52.      As alleged above, Renal Care employs approximately (17) seventeen nephrologists.

## V.      Market Power of the Unity Point Hospitals.

53.      The Unity Point Hospitals hold approximately 50% of the market share for the Services in the Peoria area. The remaining market share is held by St. Francis.

54.      Patients who require the Services within the Peoria area have only two choices: St. Francis or one of the Unity Point Hospitals.

55.      However, because both St. Francis and the Unity Point Hospitals now have an exclusive agreement with Renal Care, patients have no choice when selecting a nephrologist to provide the Services, and must choose a Renal Care nephrologist.

56.      While patients can choose a doctor outside of Renal Care for outpatient dialysis, they will need to switch to a Renal Care nephrologist upon being admitted to any of the hospitals in the Peoria area in order to receive the Services.

57.      Accordingly, the Unity Point Hospitals possess market power in the market for the Services in the Peoria area at their respective distribution level, and face no meaningful constraints on their ability to exercise that power.

## VI.    The Unity Point Hospitals' Anticompetitive Conduct

58.    As alleged above, Dr. Rahman has performed the Services at the Unity Point Hospitals since 2015.

59.    Prior to August 1, 2018, Dr. Rahman had privileges to perform those Services at the Unity Point Hospitals.

60.    However, on May 30, 2018 Unity Point informed Dr. Rahman that the Unity Point Hospitals entered into the Exclusive Agreement with Renal Care under which Renal Care would be the exclusive provider of the Services at the Unity Point Hospitals. *See* **Ex. 1** (May 2018 letter).

61.    Pursuant to that Exclusive Agreement, effective August 1, 2018, Dr. Rahman, as well as any doctor who is not employed by Renal Care, will be unable to perform the Services at the Unity Point Hospitals, even if they possessed those privileges prior to August 1, 2018. All of Dr. Rahman's existing patients will be forced to choose a Renal Care nephrologist for the Services they require if they are admitted to one of the Unity Point Hospitals, regardless of whether the patient desires to continue seeing Dr. Rahman as their chosen nephrologist. *Id.*

62.    As a result of the Exclusive Agreement, Dr. Rahman will no longer receive referrals from doctors at the Unity Point Hospitals, who know he will be unable to perform the Services there. Additionally, his referral sources from outside the Unity Point Hospitals will be unwilling to direct their patients to a nephrologist who cannot perform the Services there.

63.    Further, Dr. Rahman will suffer irreparable harm if the Exclusive Agreement is allowed to stand because all hospitals in the Peoria area, including the Unity Point Hospitals and St. Francis, will have exclusive agreements with Renal Care, completely preventing Dr. Rahman from performing the Services anywhere in the Peoria area. The Services are a necessary and critical part of any nephrologist's practice.

64.     If the Exclusive Agreement is allowed to stand, effective August 1, 2018 Dr. Rahman's nephrology practice will be eviscerated: he will lose an overwhelming share of his patients, his efforts to attract new patients will be drastically impeded, and he will be unable to maintain a nephrology practice in the Peoria area. By extension, he will be unable to make a living to support and provide for his family.

65.     Dr. Rahman has built a specialty in nephrology, and is not qualified to accept employment in any other medical specialty to earn a similar salary. Accordingly, Defendants' conduct will irreparably injure Dr. Rahman unless this Court enjoins the Unity Point Hospitals from revoking his privileges to perform the Services and from enforcing the Exclusive Agreement.

66.     Additionally, after August 1, 2018, all patients admitted to the Unity Point Hospitals who require the Services will have no choice but to select a Renal Care nephrologist, regardless of their preference.

67.     Consequently, the Exclusive Agreement has provided the Defendants with market power in their respective distribution levels of the market for the Services, and the Defendants will be able to leverage this market power by demanding a higher, monopoly price for the Services.

68.     As a result of the Exclusive Agreement, the Unity Point Hospitals will have substantial bargaining power over any insurance providers for patients in the Peoria area. Insurance providers will be unable to remove Renal Care from their network because its nephrologists are the only ones who can perform the Services in the Peoria area.

69.     The Exclusive Agreement will also negatively affect quality and continuity of care for patients requiring the Services as the patient may not have selected a nephrologist from Renal Care. However, when the patient is quite ill and requires hospitalization, the patient will then be

forced to select a nephrologist at Renal Care and change in the middle of their treatment in order to receive the Services during their hospital stay.

70.     On information and belief, Renal Care has a four-month backlog even though it has not yet absorbed any of Dr. Rahman's existing patients or any new patients that would be referred to him but for the Exclusive Agreement. Effective August 1, 2018, this backlog and wait time will only increase thereby diminishing the patient's quality of care.

71.     Conversely, Dr. Rahman is able to see new patients within 24-48 hours after the initial patient contact.

72.     The Exclusive Agreement will further harm any patients who require the Services by removing their right to choose a nephrologist.

73.     Even if patients choose Dr. Rahman as their nephrologist, they will be forced to select a different nephrologist from Renal Care if they are required to be admitted to one of the Unity Point Hospitals.

74.     This restriction is exacerbated by the fact that patients requiring the Services are frequently admitted to a hospital.

75.     Moreover, Medicare will only pay for one (1) nephrologist visit per 24-hour period. Accordingly, if Dr. Rahman sees a patient and immediately thereafter, the patient is admitted to the hospital and sees a nephrologist at Renal Care, the costs associated with one of the visits will be borne by the patient.

76.     As a result of the Exclusive Agreement, both Renal Care and the Unity Point Hospitals will be able to raise prices for the Services with impunity, as well as make other decisions that negatively affect the quality of those Services without facing any meaningful competitive pressure.

**COUNT I**
**VIOLATION OF SECTION 1 OF THE SHERMAN ACT**
**(Against All Defendants)**

77.     Dr. Rahman realleges and restates the preceding paragraph of this Complaint as though full stated herein in Count I.

78.     Both the Unity Point Hospitals and Renal Care possess market power for their respective distribution levels in the relevant product market in the relevant geographic market.

79.     The Exclusive Agreement effectively prevents Dr. Rahman from performing the Services, which represents the relevant product market, in 100% of the relevant geographic market (the Peoria area).

80.     As a result of the Exclusive Agreement, Dr. Rahman cannot perform the Services at the Unity Point Hospitals. Dr. Rahman is already foreclosed from performing the Services at St. Francis due to Renal Care's prior exclusive agreement with St. Francis. Accordingly, Dr. Rahman is completely foreclosed from competing in the market for the Services.

81.     The Exclusive Agreement has an adverse effect on competition in the Peoria area, because (1) it prevents doctors who are not part of Renal Care from performing the Services in this area and (2) it prevents patients from selecting a doctor to perform the Services unless he or she is employed by Renal Care.

82.     The Unity Point Hospitals have violated Section 1 of the Sherman Act, 15. U.S.C. § 1 by engaging in vertical exclusionary dealing.

83.     Dr. Rahman has already been injured and suffered damages as a result of the Unit Point Hospital's exclusionary conduct. Effective August 1, 2018, he will be precluded from performing the Services in the Peoria area, and will immediately lose patients once they learn he cannot fully treat them when they are hospitalized. Additionally, Dr. Rahman will lose his standing

relationships with referring doctors in the Peoria area, who will not jeopardize their patient's continuity and quality of care by sending their patients to a doctor who cannot fully treat them if they are hospitalized.

84.     This injury sustained by Dr. Rahman will only increase with each passing day that the Exclusive Agreement remains in full force and effect. If the Exclusive Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly income.

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

A.     Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally  for actual compensatory damages in an amount to be proven at trial;

B.     Award damages in the amount of triple the amount of the actual damages awarded per the Sherman Act;

C.     Award reasonable attorneys' fees and costs per the Sherman Act;

D.     Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

E.     Grant such other and further relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF SECTION 2 OF THE SHERMAN ACT (MONOPOLIZATION)
### (Against All Defendants)

85.     Dr. Rahman realleges and restates Paragraphs 1-76 of this Complaint as though full stated herein in Count II.

86.     The Unity Point Hospitals possess substantial market power in their level of distribution for the relevant product market in the relevant geographic market.

87.     The Unity Point Hospitals have willfully maintained and abused their market power in their relevant markets through their exclusionary conduct, specifically by entering into the Exclusive Agreement, which effectively prevents Dr. Rahman from performing the Services in 100% of the relevant geographic market.

88.     The Exclusive Agreement constitutes an act by which the Unity Point Hospitals have willfully exploited and maintained their market power in the market for the Services.

89.     There is no valid procompetitive business justification for the Exclusive Agreement. Instead, it serves only to prevent doctors who are not employed by Renal Care, like Dr. Rahman, from competing in the market for the Services.

90.     Accordingly, the Unity Point Hospitals violated Section 2 of the Sherman Act, 15. U.S.C. § 2, due to their monopolization of their respective levels of distribution in the market for the Services.

91.     Dr. Rahman has already been injured and suffered damages as a result of the Unit Point Hospital's exclusionary conduct. Effective August 1, 2018, he will be precluded from performing the Services in the Peoria area, and will immediately lose patients once they learn he cannot fully treat them when they are hospitalized. Additionally, Dr. Rahman will lose his standing relationships with referring doctors in the Peoria area, who will not jeopardize their patient's continuity and quality of care by sending their patients to a doctor who cannot fully treat them if they are hospitalized.

92.     This injury sustained by Dr. Rahman will only increase with each passing day that the Exclusive Agreement remains in full force and effect. If the Exclusive Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly income.

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

A.  Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally actual compensatory damages in an amount to be proven at trial;

B.  Award damages in the amount of triple the amount of the actual damages awarded per the Sherman Act;

C.  Award reasonable attorneys' fees and costs per the Sherman Act;

D.  Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

E.  Grant such other and further relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF SECTION 2 OF THE SHERMAN ACT
### (ATTEMPTED MONOPOLIZATION)
### (Against All Defendants)

93.  Dr. Rahman realleges and restates Paragraphs 1 through 76 as though fully stated herein.

94.  The Unity Point Hospitals specifically intended to monopolize the relevant product market in the relevant geographic market at its distribution level by entering into the Exclusive Agreement with Renal Care.

95.  Similarly, Renal Care specifically intended to monopolize the relevant product market in the relevant geographic market at its distribution level by entering into the Exclusive Agreement with the Unity Point Hospitals, particularly given the exclusive agreement it already has with St. Francis.

96.     The Unity Point Hospitals' attempts to harm Dr. Rahman, including enforcing the Exclusive Agreement and revoking Dr. Rahman's privileges to perform the Services. This constitutes an improper attempt to leverage its significant market power in the market for the Services for the specific purpose of monopolizing it.

97.     The Unity Point Hospitals have engaged in specific anticompetitive conduct by entering into an Exclusive Agreement that would preclude any doctors not employed by Renal Care from performing the Services in the Peoria area.

98.     The Unity Point Hospitals have market power at their distribution level by virtue of their significant share of the market for the Services in the Peoria area, as alleged above.

99.     Should Defendants be allowed to maintain their Exclusive Agreement, there is not only a dangerous possibility, but a certainty, that Renal Care will succeed in achieving monopoly power for its distribution level in the relevant product market in the Peoria area as it will be the only nephrologists in the entire Peoria area who may perform the Services.

100.    Likewise, there is a dangerous possibility that the Unity Point Hospitals will be able to exert market power over their distribution level for the relevant product market in the Peoria area.

101.    Additionally, if the Exclusive Agreement is allowed to stand, there is a dangerous possibility that the Unity Point Hospitals will be able to coordinate with St. Francis and Renal Care and exercise market power over the relevant product market, as both St. Francis and the Unity Point Hospitals would be exclusively using Renal Care for such Services.

102.    There is no valid procompetitive business justification for the Exclusive Agreement. Instead, it serves only to prevent doctors who are not a part of Renal Care, like Dr. Rahman, from competing in the market for the Services.

103.     Accordingly, both the Unity Point Hospitals and Renal Care have violated Section 2 of the Sherman Act, 15. U.S.C. § 2, due to their attempted monopolization of their respective distribution levels of the market for the Services in the Peoria area.

104.     Dr. Rahman has already been injured and suffered damages as a result of the Unit Point Hospital's exclusionary conduct. Effective August 1, 2018, he will be precluded from performing the Services in the Peoria area, and will immediately lose patients once they learn he cannot fully treat them when they are hospitalized. Additionally, Dr. Rahman will lose his standing relationships with referring doctors in the Peoria area, who will not jeopardize their patient's continuity and quality of care by sending their patients to a doctor who cannot fully treat them if they are hospitalized.

105.     This injury sustained by Dr. Rahman will only increase with each passing day that the Exclusive Agreement remains in full force and effect. If the Exclusive Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly income.

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

    A. Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally actual compensatory damages in an amount to be proven at trial;

    B.     Award damages in the amount of triple the amount of the actual damages awarded per the Sherman Act;

    C.     Award reasonable attorneys' fees and costs per the Sherman Act;

    D.     Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

E. Grant such other and further relief as this Court deems just and proper.

## COUNT IV
## VIOLATION OF THE ILLINOIS ANTITRUST ACT (EXCLUSIVE DEALING)
### (Against All Defendants)

106. Dr. Rahman realleges and restates Paragraphs 1 through 76 as though fully stated herein.

107. The Unity Point Hospitals possess market power for their respective distribution levels in the relevant product market in the relevant geographic market.

108. The Exclusive Agreement effectively prevents Dr. Rahman from performing the Services, which constitutes the relevant product market, in 100% of the relevant geographic market.

109. As a result of the Exclusive Agreement, Dr. Rahman cannot perform the Services at the Unity Point Hospitals. Because he is already foreclosed from doing so at St. Francis due to its earlier exclusive agreement with Renal Care, Dr. Rahman will be completely foreclosed from competing in the market for the Services in the Peoria area.

110. The Exclusive Agreement has an adverse effect on competition in the Peoria area, because (1) it prevents doctors who are not part of Renal Care from performing the Services in this area and (2) it prevents patients from selecting a doctor to perform the Services unless he or she is employed by Renal Care.

111. Accordingly, the Unity Point Hospitals have willfully violated Section 3(2) of the Illinois Antitrust Act, 740 ILCS 10/3(2).

112. Dr. Rahman has already been injured and suffered damages as a result of the Unit Point Hospital's exclusionary conduct. Effective August 1, 2018, he will be precluded from performing the Services in the Peoria area, and will immediately lose patients once they learn he

cannot fully treat them when they are hospitalized. Additionally, Dr. Rahman will lose his standing relationships with referring doctors in the Peoria area, who will not jeopardize their patient's continuity and quality of care by sending their patients to a doctor who cannot fully treat them if they are hospitalized.

113.     This injury sustained by Dr. Rahman will only increase with each passing day that the Exclusive Agreement remains in full force and effect. If the Exclusive Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly income. This injury will only increase the longer Defendants enforce the Exclusive Agreement, and if that Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly revenue, and which relies on his ability to perform the Services.

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

A.     Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally actual compensatory damages in an amount to be proven at trial;

B.     Award damages in the amount of triple the amount of the actual damages awarded per the Sherman Act;

C.     Award reasonable attorneys' fees and costs per the Sherman Act;

D.     Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

E.     Grant such other and further relief as this Court deems just and proper.


## COUNT V
## VIOLATION OF THE ILLINOIS ANTITRUST ACT (MONOPOLIZATION)
### (Against All Defendants)

114.    Dr. Rahman realleges and restates Paragraphs 1 through 76 as though fully stated herein.

115.    The Unity Point Hospitals possess substantial market power in the relevant product market in the relevant geographic market.

116.    The Unity Point Hospitals have willfully maintained and abused their market power through their exclusionary conduct, specifically by entering into the Exclusive Agreement, which effectively prevents Dr. Rahman from performing the Services, which constitutes the relevant product market, in 100% of the relevant geographic market.

117.    The Exclusive Agreement constitutes an act by which the Unity Point Hospitals have willfully exploited and maintained their market power in their respective distribution levels of the relevant product market in the Peoria area.

118.    There is no valid procompetitive business justification for the Exclusive Agreement. Instead, it serves only to prevent doctors who are not employed by Renal Care, like Dr. Rahman, from competing in the market for the Services.

119.    Accordingly, the Unity Point Hospitals have willfully violated Section 3(3) of the Illinois Antitrust Act, 740 ILCS 10/3(3), due to their monopolization of their respective distribution levels of the market for the Services.

120.    Dr. Rahman has already been injured and suffered damages as a result of the Unit Point Hospital's exclusionary conduct. Effective August 1, 2018, he will be precluded from performing the Services in the Peoria area, and will immediately lose patients once they learn he cannot fully treat them when they are hospitalized. Additionally, Dr. Rahman will lose his standing relationships with referring doctors in the Peoria area, who will not jeopardize their patient's

continuity and quality of care by sending their patients to a doctor who cannot fully treat them if they are hospitalized.

121.    This injury sustained by Dr. Rahman will only increase with each passing day that the Exclusive Agreement remains in full force and effect. If the Exclusive Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly income.

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

    A. Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally actual compensatory damages in an amount to be proven at trial;

    B.    Award damages in the amount of triple the amount of the actual damages awarded per the Sherman Act;

    C.    Award reasonable attorneys' fees and costs per the Sherman Act;

    D.    Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

    E.    Grant such other and further relief as this Court deems just and proper.

## COUNT VI
## VIOLATION OF THE ILLINOIS ANTITRUST ACT
## (ATTEMPTED MONOPOLIZATION)
### (Against All Defendants)

122.    Dr. Rahman realleges and restates Paragraphs 1 through 76 as though fully stated herein.

123.    The Unity Point Hospitals specifically intended to monopolize their distribution level of the relevant product market in the relevant geographic market by entering into the Exclusive Agreement with Renal Care.

124.     The Unity Point Hospitals' attempt to harm Dr. Rahman by enforcing the Exclusive Agreement and revoking his privileges to perform the Services. This constitutes an improper attempt to leverage its significant market power in the relevant product market for the specific purpose of monopolizing it.

125.     The Unity Point Hospitals have engaged in specific anticompetitive conduct by entering into an Exclusive Agreement that would preclude any doctor not employed by Renal Care from performing the Services in the Peoria area.

126.     The Unity Point Hospitals have market power in their distribution level by virtue of their significant share of the market for the Services in the Peoria area, as alleged above.

127.     Should Defendants be allowed to maintain their Exclusive Agreement, there is not only a dangerous possibility, but a certainty, that Renal Care will succeed in achieving monopoly power in the market for the Services in the Peoria area.

128.     Likewise, there is a dangerous possibility that the Unity Point Hospitals will be able to exert market power over their respective distribution level of the market for the Services in the Peoria area.

129.     Additionally, if the Exclusive Agreement is allowed to stand, there is a dangerous possibility that the Unity Point Hospitals will be able to coordinate with St. Francis and Renal Care, and exercise market power over the relevant product market, as both St. Francis and the Unity Point Hospitals would be exclusively using Renal Care for such Services.

130.     There is no valid procompetitive business justification for the Exclusive Agreement. Instead, it serves only to prevent doctors who are not a part of Renal Care, like Dr. Rahman, from competing in the market for the Services in the Peoria area.

131.    Accordingly, the Unity Point Hospitals have willfully violated Section 3(3) of the Illinois Antitrust Act, 740 ILCS 10/3(3), due to their attempted monopolization of their respective distribution levels of the market for the Services.

132.    Dr. Rahman has already been injured and suffered damages as a result of the Unit Point Hospital's exclusionary conduct. Effective August 1, 2018, he will be precluded from performing the Services in the Peoria area, and will immediately lose patients once they learn he cannot fully treat them when they are hospitalized. Additionally, Dr. Rahman will lose his standing relationships with referring doctors in the Peoria area, who will not jeopardize their patient's continuity and quality of care by sending their patients to a doctor who cannot fully treat them if they are hospitalized.

133.    This injury sustained by Dr. Rahman will only increase with each passing day that the Exclusive Agreement remains in full force and effect. If the Exclusive Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly income.

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

      A.   Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally actual compensatory damages in an amount to be proven at trial;

      B.   Award damages in the amount of triple the amount of the actual damages awarded per the Sherman Act;

      C.   Award reasonable attorneys' fees and costs per the Sherman Act;

      D.   Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

E.      Grant such other and further relief as this Court deems just and proper.

## COUNT VII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANCEMENT
### (Against All Defendants)

134.    Dr. Rahman realleges and restates Paragraphs 1 through 76 as though fully stated herein.

135.    As alleged above, Dr. Rahman has performed the Services at the Unity Point Hospitals since 2015, and has maintained his privileges to perform the Services since that time.

136.    Dr. Rahman had a reasonable expectation that his business relationships would continue with his patients and that he would be allowed to continue to perform the Services.

137.    The Unity Point Hospitals knew of Dr. Rahman's reasonable expectancy that his business relationships would continue with his patients and that he would be allowed to continue to perform the Services.

138.    Indeed, the Unity Point Hospitals conceded at the hearing that Dr. Rahman has never been disciplined, warned or reprimanded in any way by the Unity Point Hospitals, and that the decision to enter into the Exclusive Agreement with Renal Care had nothing to do with Dr. Rahman's qualifications, experience, performance, quality of care or his standing in the nephrology community.

139.    The Unity Point Hospitals knew that if they entered into the Exclusive Agreement with Renal Care, they would effectively prevent Dr. Rahman from performing the Services in the Peoria area, thereby interfering with his ability to attract new patients, as well as to continue to treat his existing patients.

140.    Accordingly, the Unity Point Hospitals intentionally and unjustifiably interfered to cause a termination of Dr. Rahman's reasonable and legitimate expectancy from being fulfilled.

141.   The Unity Point Hospitals do not directly compete with Dr. Rahman or other nephrologists, and they were not otherwise protected by any privilege in entering into the Exclusive Agreement.

142.   Dr. Rahman has already been injured and suffered damages as a result of the Unit Point Hospital's exclusionary conduct. Effective August 1, 2018, he will be precluded from performing the Services in the Peoria area, and will immediately lose patients once they learn he cannot fully treat them when they are hospitalized. Additionally, Dr. Rahman will lose his standing relationships with referring doctors in the Peoria area, who will not jeopardize their patient's continuity and quality of care by sending their patients to a doctor who cannot fully treat them if they are hospitalized.

143.   This injury sustained by Dr. Rahman will only increase with each passing day that the Exclusive Agreement remains in full force and effect. If the Exclusive Agreement is allowed to stand, Dr. Rahman will lose his entire nephrology practice, through which he earns approximately $250,000.00 in yearly income.

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

A.   Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally, actual compensatory damages in an amount to be proven at trial;

B.   Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

C.   Grant such other and further relief as this Court deems just and proper.

## COUNT VIII
## VIOLATION OF ILLINOIS CONSUMER FRAUD ACT

**(Against All Defendants)**

144.    Dr. Rahman realleges and restates Paragraphs 1 through 76 as though fully stated herein.

145.    Section 2 of the Consumer Fraud Act prohibits "unfair methods of competition and unfair or deceptive acts or practices" in the conduct of any trade or commerce. *See* 815 ILCS 505/2.

146.    Under Illinois law, unfair methods of competition includes practices that offend public policy, are oppressive, or cause consumers substantial injury.

147.    By entering into the Exclusive Agreement, the Unity Point Hospitals have offended public policy, as the Exclusive Agreement will prevent any nephrologists who are not employed by Renal Care from performing the Services in the Peoria area.

148.    The Exclusive Agreement further offends public policy by preventing patients in the Peoria area from choosing a nephrologist to perform the Services if the nephrologist is not employed by Renal Care.

149.    The Exclusive Agreement also constitutes oppressive conduct by Defendants, as it not only prevents any doctors unaffiliated with Renal Care from performing the Services in the Peoria area, but it prevents patients in that area from choosing a doctor to perform those Services, unless that doctor is not employed by Renal Care.

150.    The Exclusive Agreement has caused substantial injury to patient consumers in the Peoria area, who now have no meaningful choice in choosing a nephrologist to perform the Services.

151.    Accordingly, Defendants have violated the Consumer Fraud Act by engaging in unfair methods of competition and unfair acts or practices.

152.    Dr. Rahman has suffered actual damages as a result of Defendants' unfair practices, in that effective August 1, 2018, he will be unable to perform the Services in the Peoria area, eviscerating his nephrology practice, which depends on the ability to perform those Services for patients who become hospitalized.

153.    But for the Exclusive Agreement, Dr. Rahman would have continued to have privileges to perform the Services at the Unity Point Hospitals.

154.    A copy of this Complaint has been mailed to the Attorney General of the State of Illinois, pursuant to 815 ILCS 505/10a(d).

WHEREFORE Plaintiff Dr. Saadur Rahman respectfully requests that this Honorable Court:

A.    Enter judgment in favor of Plaintiff and against the Defendants, jointly and severally, actual compensatory damages in an amount to be proven at trial;

B.    Award reasonable attorney's fees and costs as provided by the Consumer Fraud Act;

C.    Enter a temporary restraining order and preliminary injunction against Defendants Methodist, Proctor and Pekin enjoining them from revoking Dr. Rahman's privileges to perform the Services at the Unity Point Hospitals and from enforcing the Exclusive Agreement between the Unity Point Hospitals and Renal Care Associates, S.C.; and

D.    Grant such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted,
DR. SAADUR RAHMAN

/s/ Jennifer B. Tee
By:     One of His Attorneys

Matthew Sheahin (ARDC#6243872)
Jennifer B. Tee (ARDC#6292487)
Tom Fox (ARDC#6326911)
Lavelle Law, Ltd.
141 W. Jackson Suite 2800
Chicago, IL 60604
Tele: (312) 888-4111
Facsimile: (312) 658-1430
msheahin@lavellelaw.com
jtee@lavellelaw.com
tfox@lavellelaw.com
S:\10251-10500\10296\Pleadings\Complaint.FINAL.8.1.18.docx